NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000482
19-OCT-2016
08:12 AM**

NO. CAAP-15-0000482

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
BRANDON K. HILLIS, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 13-1-1781)

SUMMARY DISPOSITION ORDER
(By:  Foley, Presiding Judge, Fujise and Reifurth, JJ.)

Defendant-Appellant Brandon K. Hillis (Hillis) appeals from a June 23, 2015 Circuit Court of the First Circuit (Circuit Court) Judgment of Conviction and Sentence.[1]  After a jury trial, the Circuit Court convicted Hillis of:  (1) Ownership or Possession Prohibited of Any Firearm or Ammunition by a Person Convicted of Certain Crimes, in violation of Hawaiʻi Revised Statutes (HRS) § 134-7(b)[2] and (h)[3] (2011) (Counts 1-6) (Felon in Possession); (2) Possession of Prohibited Detachable Ammunition

---

[1]    The Honorable Rom A. Trader presided.

[2]    HRS § 134-7(b) provides, in relevant part:

> No person who is under indictment for,
> or has waived indictment for, or has been bound over to the
> circuit court for, or has been convicted in this State or
> elsewhere of having committed a felony, or any crime of
> violence, or an illegal sale of any drug shall own, possess,
> or control any firearm or ammunition therefor.

[3]    HRS § 134-7(h) provides, in relevant part:

> Any person violating subsection (a) or (b) shall
> be guilty of a class C felony; provided that any felon
> violating subsection (b) shall be guilty of a class B
> felony. Any person violating subsection (c), (d), (e),
> (f), or (g) shall be guilty of a misdemeanor.

Magazine, in violation of HRS § 134-8(c) (2011) (Counts 7-8); (3) Methamphetamine Trafficking in the First Degree, in violation of HRS § 712-1240.7(1)(a) (2014) (Count 9); (4) Promoting a Dangerous Drug in the Third Degree, in violation of HRS § 712-1243 (2014) (Count 10); and (5) Unlawful Use of Drug Paraphernalia, in violation of HRS § 329-43.5(a) (2010) (Count 11).

On appeal, Hillis maintains that (1) the Circuit Court erred in denying the defense's motion to dismiss Counts 1-5 of the indictment where the failure to define the term "Firearm" rendered those charges fatally defective and/or violated Hillis's constitutional right to be informed of the nature and cause of the accusation against him; (2) the Circuit Court violated Hillis's constitutional right to testify by failing to ensure that he was waiving his right to testify knowingly, intentionally, and voluntarily; and (3) the Circuit Court erred in denying Hillis's motion for judgment of acquittal where there was no substantial evidence that he had actual or constructive possession of the items.

After reviewing the parties' arguments, the record on appeal, and relevant legal authority, we resolve Hillis's points on appeal as follows and affirm.

1. The Circuit Court did not err in denying Hillis's motion to dismiss Counts 1 through 5 for failing to define the term "firearm" in those charges.[4] Hillis argues that the Circuit Court erred because the charges were fatally defective for two

---

[4] In each of Counts 1-5, Hillis was charged, in pertinent part, as follows:

> On or about the 20[th] day of November, 2013, in the City and County of Honolulu, State of Hawaii, BRANDON K. HILLIS, a person who has been convicted in the State of Hawaii or elsewhere of having committed with knowledge or reckless disregard of the substantial and unjustifiable risk that he had been so convicted, did intentionally or knowingly own, possess, or control an object, with intent, knowledge, or reckless disregard of the substantial and unjustifiable risk that the object was a firearm and/or ammunition therefor, thereby committing the offense of Ownership or Possession Prohibited of Any Firearm or Ammunition by a Person Convicted of Certain Crimes, in violation of Section 134-7(b) and (h) of the Hawaii Revised Statutes.

reasons: (1) the term "firearm" in the charge fails to set forth all the essential elements of the offense and therefore should have been defined; and (2) the State was required to prove not only that the weapons were firearms, but that they met the specific statutory definition set forth in HRS § 134-1. Hillis claims the denial of his motion violated of Hawai'i Rules of Penal Procedure (HRPP) Rule 7(d), and the Hawai'i Const. art. I, §§ 5, 10, and 14.

Whether a charge sets forth all the essential elements of the offense is a question of law reviewed by the appellate courts *de novo*. State v. Young, 107 Hawai'i 36, 39, 109 P.3d 677, 680 (2005). The challenged counts tracked the language of the statute, HRS § 134-7(b) and (h), and while they do not include the definition of "firearm" under HRS § 134-1, this definition of firearm does not create an additional element of the Felon in Possession offense and is consistent with the common, everyday understanding of the meaning of the term. State v. Mita, 124 Hawai'i 385, 390, 245 P.3d 458, 463 (2010); compare Merriam-Webster's Collegiate Dictionary 471 (11th ed. 2003) ("a weapon from which a shot is discharged by gunpowder, [usually] used of small arms.") and Black's Law Dictionary 751 (10th ed. 2014) ("[a] weapon that expels a projectile (such as a bullet or pellets) by the combustion of gunpowder or other explosive. – [a]lso termed gun"), with HRS § 134-1 ("'Firearm' means any weapon, for which the operating force is an explosive, including but not limited to pistols, revolvers, rifles, shotguns automatic firearms, noxious gas projectors, mortars, bombs, and cannon.").

2. The Circuit Court did not violate Hillis's constitutional right to testify by failing to conduct a proper prior-to-trial advisory and ultimate Tachibana[5] colloquy. Hillis does not dispute that the Circuit Court covered all the aspects of the right to testify and the right not to testify, nor does he point to any indication that he did not understand his rights as the Circuit Court explained them.

---

[5]     Tachibana v. State, 79 Hawai'i 226, 900 P.2d 1293 (1995).

3

Hillis contends the prior-to-trial colloquy was deficient because it was overly complicated and the Circuit Court misstated the requirement that the defendant answer questions by the prosecutor. It appears that, in an abundance of caution, the Circuit Court conducted the entire ultimate Tachibana colloquy prior to trial, which informed and alerted Hillis to rights in addition to those required by State v. Lewis, 94 Hawaiʻi 292, 295, 12 P.3d 1233, 1236 (2000) and State v. Monteil, 134 Hawaiʻi 361, 371, 341 P.3d 567, 577 (2014). Therefore, advising Hillis of additional rights that are to be discussed later in the trial cannot be said to render the pretrial advisement overly complicated.

Hillis argues that the trial court mislead him by telling him if he testified he would be, "required to answer questions on cross-examination by . . . the prosecutor." Hillis contends he took this to mean "to answer every question asked of him by the state." Hillis argues that he believed that he would be required to answer every question by the prosecution, even questions over the objection of defense counsel, improper questions, irrelevant questions, questions outside the scope of direct, or questions related to matter that were prejudicial or subject to the motions *in limine*. To the extent the Circuit Court's warning was in error, when read in context, it was harmless.

> If you do testify, you'll be <u>treated just like every other witness in this case</u>. You'll come up to the witness stand, you'll be sworn in, and then you'll be asked questions by your lawyer, but you'll be required to answer questions on cross-examination by . . . [the deputy prosecutor.]

(Emphasis added.) In the context of being treated "just like every other witness," Hillis would have seen other witnesses questioned prior to being required to make his decision. In addition, because Hillis was given the ultimate Tachibana colloquy prior to making his decision not to testify any confusion would have been corrected.

Hillis also argues that the Circuit Court's ultimate Tachibana colloquy was deficient because it failed to engage in a "true colloquy" and instead merely recited a litany of rights.

4

The Circuit Court fully advised Hillis of the five rights required by the Tachibana colloquy. The court then permitted a ten-minute recess to allow Hillis to speak to his attorney. The court questioned Hillis after consultation with defense counsel and ascertained that his decision was knowing, intelligent, and voluntary, and that he was "thinking clearly," and had "enough time to talk." The Circuit Court assiduously followed the mandates of Tachibana in determining Hillis was aware of his right to testify or not to testify, therefore Hillis's claim the ultimate Tachibana colloquy was deficient because it failed to engage in a "true colloquy" is without merit.

Hillis claims that including the word "important" and the recommendation he should speak to his attorney in regard to the right not to testify overly-emphasized that right. After a careful review of both the pretrial warning and Tachibana exchange with Hillis, we conclude that the right not to testify was not over-emphasized.

3. The Circuit Court did not err in denying Hillis's motion for judgment of acquittal as, taking the evidence in the light most favorable to the prosecution, State v. Timoteo, 87 Hawai'i 108, 112-13, 952 P.2d 865, 869-70 (1997), there was substantial evidence of his actual or constructive possession of the firearms, illicit drugs, and paraphernalia (Contraband) with which he was charged. Hillis argues that the State has offered no evidence to establish the nexus between himself and the Contraband, other than the fact that he was present in the bedroom with the Contraband. Hillis points out there was no physical evidence introduced, such as fingerprints or DNA, proving possession of the Contraband; no evidence as to the ownership of the apartment; no evidence that Hillis had sole access to the bedroom; that other people were present in the apartment; and that Widija's personal papers and a magazine addressed to Widija were present in the living room. Hillis further argues personal items found in the bedroom establish mere access to the bedroom and that the presence of Widija's personal property indicates that he did not have exclusive access to the apartment.

5

"To support a finding of constructive possession the evidence must show 'a sufficient nexus between the accused and the drug to permit an inference that the accused had both power and the intent to exercise dominion and control over the drug.' Mere proximity is not enough." State v. Mundell, 8 Haw. App. 610, 622, 822 P.2d 23, 29 (1991) (citation omitted), overruled on other grounds by State v. Jenkins, 93 Hawai'i 87, 112, 997 P.2d 13, 38 (2000). Several of the factors this court identified in State v. Moniz, 92 Hawai'i 472, 476, 992 P.2d 741, 745 (App. 1999)[6] as indicative of possession were present in this case. Hillis was present in the bedroom alone in his underwear at the specified address when the search warrant was executed, the shotgun was in plain view, ammunition and drugs were stashed about the bedroom, he was found in close proximity, and had easy access to the Contraband, glass pipes were found in the bedroom and uncharged broken glass pipes of the type used to smoke methamphetamine were found in the living room, the Contraband was within an enclosed space, and a large sum of money was present.

In the present case there was also ample evidence from which a jury could infer that Hillis had the power and intent to exercise dominion and control over the Contraband. Hillis was found within the bedroom where the Contraband was recovered secured by a combination lock, three surveillance cameras and a computer, and a shotgun within reach. Further, only Hillis's personal documents were found in the bedroom, including three birth certificates, Social Security card, and Massachusetts

---

[6]
> 1) the defendant's ownership of or right to possession of the place where the controlled substance was found; 2) the defendant's sole access to the place where the controlled substance was found; 3) defendant under the influence of narcotics when arrested; 4) defendant's presence when the search warrant executed; 5) the defendant's sole occupancy of the place where the controlled substance was found at the time the contraband is discovered; 6) the location of the contraband; 7) contraband in plain view; 8) defendant's proximity to and the accessibility of the narcotic;
> 9) defendant's possession of other contraband when arrested; 10) defendant's incriminating statements when arrested; 11) defendant's attempted flight; 12) defendant's furtive gestures; 13) presence of odor of the contraband;
> 14) presence of other contraband or drug paraphernalia, not included in the charge; 15) place drugs found was enclosed.

Moniz, Id. (ellipses and brackets omitted).

Department of Public Safety identification card in close proximity to the ammunition giving rise to the charge. In addition, the traffic citation issued to Hillis and pinned to the inside of the bedroom door--where the occupant would be sure to see it--showed that he had access to the bedroom for at least several weeks. In addition, ammunition outside the safe matching ammunition found loaded into the firearms within the safe suggest Hillis had access to the safe. Taking the evidence and the reasonable inferences therefrom as a whole, a reasonable mind could conclude that Hillis had both the capability and intent to exercise control and dominion over the Contraband. State v. Thomas, 137 Hawai'i 207, 366 P.3d 1086, CAAP-14-0000448 2016 WL 797066 at *5 (App. Feb. 29, 2016) (SDO) quoting State v. Tabaldi, 77 A.3d 1124, 1134 (N.H. 2013) ("Personal possessions of the defendant found in close proximity to the controlled substance may provide a sufficiently close nexus between the defendant and the substance to allow the jury to infer possession.") (internal quotation marks omitted).

For the foregoing reasons, the June 23, 2015 Judgment of Conviction and Sentence entered by the Circuit Court of the First Circuit is affirmed.

DATED: Honolulu, Hawai'i, October 19, 2016.

On the briefs:

Jeffrey A. Hawk,
for Defendant-Appellant.

Presiding Judge

Donn Fudo,
Deputy Prosecuting Attorney,
City and County of Honolulu
for Plaintiff-Appellee.

Associate Judge

Associate Judge